The Chancellor.
Sd far as relates to the defendants Prudence and John A. Cooper, the cause is free from difficulty. Prudence was devisee and legatee for life or widowhood of the whole estate, real and personal, and executrix of the will. If she, the executrix, instead of applying the personal estate to the payment of the debts, converted it to her own use, the court could have no hesitation in subjecting her interest in the real estate under the will of which she was executrix, to the payment of the debts which she ought to have paid out of the per - sonal property.
John A. Cooper, as heir at law of John Cooper, deceased, is entitled to the remainder in the real estate of said deceased after the life estate therein given by the will to Prudence Cooper; and on the death of Prudence would, as next of kin to the testator, be entitled to the personal estate that remained after the' payment of the debts of John A. Cooper, deceased.
John A. Cooper must he taken, from his answer, to have connived at or consented to the conversion by the executrix to her own use of the personal estate, and to have joined in the deed to Stout for the purpose of putting the real estate beyond-the reach of the creditors of' the testator-
*506 In reference to Stout, so far as the consideration money remains unpaid by him to the grantors in the deed, it is a fit case for the interposition of this court to prevent it from going into the hands of Prudence and John A. Cooper, who admit themselves to be insolvent.
But the case opens a wider range of inquiry. Several questions were started in the argument on which I shall do' no moro than intimate, shortly, my impressions; as I think the case may be decided without considering them fully.
The will does not charge the land with the payment of the' debts, in exoneration of the personal estate. The personal estate was primarily liable for the payment of the debts. If the personal estate was insufficient to pay the debts,- it seems to me that the only safe course for the executrix, under the will, would have been to take the ordinary steps before the orphans’ court to-obtain a decree for the sale of lands to pay debts. But I do not think it necessary to examine particularly the question, somewhat considered in the argument, whether this will authorized’ the executrix to sell lands to pay debts. I think it is obvious that the conveyance to Stout was made by Prudence Cooper in her character of devisee of a life estate in the lands, and by-John A. Cooper as heir, at law of the remainder.
Under the answer of Prudence and John A. Cooper admitting the conversion of the personal estato by Prudence and the; insolvency of both of them, and the design, on their part, to put the real estate beyond the reach of the creditors of the tes--' tator, the case must be considered in the same light as if the personal and real estate had been given to Prudence absolutely and in fee and she appointed executrix.
It is a different case from that of- an intestacy and administration and a sale by the heir not being administrator; and is-different, also, from the case of a will of real and personal estate devising the land to one and appointing another executor. It is the case of a will devising and bequeathing all the real and personal estate of the testator to one person and appointing that person executrix of the will, and a purchase of the land' from that person as the devisee thereof, no order for the sale of lands to pay debts having been obtained or applied for. In such, a- case,, if. the executor, in breaeh of his duty, converts the per *507 'vmaJ property to bis own use, instead of applying it to the payment of debts, the lands devised.to him could certainly be subjected, in his hands, to the payment of the debts. And in such a case a conveyance of the land by the devisee, she being executrix also, to another, should, in justice to the rights of creditors, be carefully scrutinized. 1 will -not inquire whether, under such circumstances, a purchaser of the land can Ire a bona fide purchaser; but whether, under the proofs in the cause, Stout can be held to be a bona fide purchaser.
1 think there is no doubt that a creditor may come into this court to test the bona tides of such a sale, and to ask that the conveyance be decreed void. Was this sale, then, a bona fide transaction ? or is Stout chargeable, under the evidence, as a party to the design of the executrix and devisee and of the heir, as admitted by them, to defeat a resort by the creditors of the >«estator to the land for the payment of their debts? if he is, it will be the duty of the court to declare the conveyance void, or to subject the lands to the payment of the debts, though Stout •should have paid the consideration. Whether it Isas been paid, or how much of if, is one of the questions in the cause.
Stout is chargeable with knowledge of the will and of the, •provisions of it. The devisee nnde.r the will is a grantor in the deed to Stout, and the deed refer:; to the will. Ho is chargeable, then, with knowledge that the devisee conveying to him was the sole executrix of the will and bound to apply the personal estate to the payment of debts, and, if that was insufficient, to fake means to have the land sold for the payment of the debts; and with knowledge that, if the executrix o.nd devisee had wasted the personal property or converted it to her own use, the lands devised to her by the same will might be subjected in her hands to the payment of the debts.
Beyond this, I think that, by testimony in the cause clearly competent, Stout is charged with knowledge of the existence of the debt to Nathan Cooper’s estate, and that, at the time the deed was mo.de to him it was unpaid, and that the personal property was insufficient to pay the debts, and that the executrix had failed to apply even what there was towards the payment of the debts.
it is difficult to understand how Stout, with the knowledge of *508 /these several matters, could have agreed to buy the land, unless -the price agreed upon.was so low as to induce him to assume ■the risk; or unless he bought with a view to aid the grantors in defeating the creditors from subjecting the lands to the payment of the debts-; or was influenced by both these considerations.
From evidence -free from objection-as-to competency it appears that the land was worth a third more than the price agreed upon ; and1 that Stout undertook-to befriend the devisee and executrix in the matter, to use his own expression made to the witness Young. But, in addition to the matters above stated of which Stout is chargeable with knowledge, we may derive aid in coming to a satisfactory conclusion by inquiring what Stout gave in consideration for the deed, by way of securing the purchase money; and what -was the position of things at-the time of the filing of-the complainant’s bill and the service of the.injunction on Stout not-to pay.the purchase money, and at the -time when the -complainant, previous to filing ,his bill, gave Stout notice not to pay over any money. This last mentioned notice Stout admits -was given about September ■1st, 1834; and the complainant’s -bill was filed October 9th, 1834, and the injunction served shortly after.
Stout in his answer says, or must be taken as intending to .say, (the-language:in the answer in this respect is studied and .peculiar,) that at the delivery of the deed to him he gave three notes; one dated July 24th, 1834, to Prudence Cooper, for $100, payable one day after date; one dated by mistake July •25th, 1834, but intended for July 24th, in favor of Prudence and John A. Cooper, for $200, payable in thirty days, with interest; and .one dated July 24th, 1834, to Prudence Cooper, -for $200, payable in eight months, with interest; the whole consideration -money being $500. How it appears clearly, by the testimony of Henry Hilliard, that one of the notes given by Stout was for .$200, payable in one year. And Stout himself, in the bill filed by him against Nathan A. Cooper and Henry Hilliard, on the 2d July, 1836, says .that on the execution of the deed from Prudence and John A. Cooper to him, on ,the 24th July, 1834, he made and delivered to them his note of that date for $200, part of the consideration money, paya *509 Lie twelve months after date. Both Stout’s answer and the answer of the Coopers concur, that a note for $200 of the consideration money was given payable in eight months. It is sufficiently clear, then, even without ihe answer of the Coopers, though I see no objection to considering that, in reference to this matter at least, that at the giving of the deed two notes, of $200 each, were given by Stout, one payable in eight months and the other in a year. It follows that no note of $200 was then given payable in thirty days; for the whole consideration money was hut $500.
Stout’s answer, if it is to be taken -as saying that a thirty days’ note for $200 was given at the time of the sale, is not according to the fact. This is a very controlling consideration in the case. Two notes, for $200 each, i. e. for $400 of the said consideration money, were given, both dated July 24 th, 1834; one payable in eight months and the other in a year. ■There is now exhibited on the part of Stout a note dated July 25th, 1834, to Prudence and John A. Cooper, for $200, at thirty days, with interest. This note must have been substituted for one of the other two $200 notes.
When was this done? and for what purpose ? Was it done on the day of the sale ? Why make any change then in the notes ? If Stout, after giving the other notes, thought he could . pay $200 in thirty days, was he so apprehensive that the money would hot be received before .it was due .that he insisted on changing one of the $200 notes to a .thirty days’ .note 7 Was this change made before Stout was served with -the injunction, or before he received the notice from the complainant before -referred to, given September 1st, 1834 ?
Three receipts are produced, one signed by-Prudence Cooper, on the hack of a note made by Stout, dated July 24th, -1834, to Prudence Cooper, for $100, payable one day after date-; which receipt is dated July 26th, 1834, and is in full for the note; another of the receipts is on the back of the thirty .days’ .note, and is dated August 26th, 1834; and the third receipt .is a loose receipt signed by Prudence Cooper, for $127 65, to he credited “on a certain note held by her against Stout for the sale of land;” this receipt is dated August 30th, 1834. All three of ¿hese receipts are dated of days prior to the 1st of September.
*510 There is a singularity .in this matter well calculated to induce •a severe scrutiny of the transaction; and I feel that I am in very little danger -of coming to a wrong conclusion in saying •that these papers were not made till after the 1st of September, and perhaps not till after the injunction was served. If I am right in this, the next question is, for what purpose was the change made in the note of $200, and for what purpose were ■the receipts given ? It could only be for the purpose of making .a case against the complainant; and this was an object in -which the executrix at that time, from the admissions in her .answer, would naturally join.
.Did Stout pay the monies for which these receipts were given? If the change in the note was made for a purpose, and evidence of the payment of it was necessary for the same purpose, and both parties were acting with a common design, very little reliance is to be .placed on the .receipts as evidence of actual •payment of the monies. But if, as I think sufficiently appears, this change in the note and these receipts were not made till after September 1st, 1834, then Stout paid after sufficient notice «to put him on inquiry ; and the payment after notice and the giving and taking receipts dated of a day prior to the notice is, •of itself, strong evidence of bad faith in the original matter of the sale and purchase.
In a case like this, where the devisee making the deed was •also executrix of the will, and as such, if the personal estate was insufficient to pay, should have applied for an order to sell land to pay the debts, but omits to do it within the year, and •then, as devisee, makes a deed for the lands to another, and has not even applied what personal estate there was towards paying the debts, but -has converted it to her own use, there is a .clear breach of duty and want of good faith in the devisee and .executrix in making the sale- or deed ; and the court should be well satisfied of the bona fides of the grantee in taking the deed. In this case, the circumstances and proofs, even without the aid of the testimony of Mrs. Cooper and Mrs. Stout, which was objected to as incompetent, are too strong evidence of the had faith of Stout to permit the lands and the value of them to be withdrawn from the creditors of the testator.
But I can see no objection to the testimony of Mrs. John A. *511 Cooper ; and if that be admitted it allows that Stout got from Mrs. Prudence Cooper one of the original $>200 notes and a loose receipt besides, after the injunction had been served on him. Her testimony, altogether, goes to show that the exchange of notes and the taking of the receipts was to enable Stout to make an. answer to the bill.
As to the testimony of Mrs. Stout, it may he that some parts of it should be excluded on the ground that, at the time of the «transaction she speaks of, she was the wife of Stout. But there, are some parts of her testimony which, it seems to me, would not fall within that rule; and inasmuch as I do not think her testimony essential to the conclusion at which I have arrived, I do not think it necessary to examine particularly the admissibility of the different parts of her evidence. Nor do I see that in a case like this the answer of the Coopers is to have no weight.The bill charges the Coopers and Stout with a common design, by the conveyance of the property to Stout, to defeat the creditors ; and it puts them all to answer. The Coopers admit it.This is certainly evidence that they, the Coopers, had such a design; and this design on their part furnishes a reason why they might be willing to sign their names to receipts to be used by’Stout in aid of their design. But, to proceed a step further, if a bill charging such a design between a grantor and grantee-charges that no money was paid, and the grantor admits it,- and the grantee cays there was, may not the admission of the grantor be considered by the court, in aid of other facts and circumstances going to discredit the answer of the grantee ? I think it may. The grantor was bound to answer the bill, as well as the grantee. The answers will agree or disagree. If the grantee says there was money paid,- and the grantor admits there was none paid, certainly the case is- not so strong in support of the deed as if both had answered that the money was paid. In weighing the testimony as to the fact this disagreement may be put in the scale. ’
I have gone carefully over the answers and the testimony in the cause, and 1 am constrained to say that it appears- strongly to me that the case made by the bill is sustained.
As to the objection that Daniel Horton’s representatives should have been made parties, I do not think it is well taken. It is- *512 evident he was but a surety on the bond/ and this'is a bill tc> subject the lands that were of the- principal obligor to the payment of the debt.
On the whole, I think the deed must be declared void, and1 the lands held liable-for-the payment of the debt.